IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kathleen Hayes | ) | |
| | ) | |
|    Plaintiff, | ) | Case No. 21-cv-1198 |
| | ) | |
| v. | ) | |
| | ) | Hon. |
| Board of Education of the City of Chicago, | ) | |
| Matthew Lyons, and Jane Does 1-3. | ) | |
| | ) | |
|    Defendants. | ) | |
| | ) | |

## Complaint

1.  This is a suit to remedy the fact that Chicago Public Schools, its Chief Talent Officer Matthew Lyons, and unknown persons acting in concert with him, conspired to have Plaintiff Kathleen Hayes fired from her position as Senior Coordinator for School Partnerships at Northwestern University in retaliation for her speech and associational activities that were critical of CPS, its CEO Janice Jackson, and its policies and practices.

2.  Upon information and belief supported by 13 screen shots of Plaintiff's social media activity in her personnel file, either defendant Lyons or persons acting in concert with him performed a targeted investigation to build a file of Plaintiff's speech and associations that were deemed critical of Chicago Public Schools and its leadership, including CEO Janice Jackson.

3.  As a result of that investigation, defendant Lyons highlighted specific complaints he and "several CPS principals" had toward Hayes, including, *e.g.*, that she was "promoting online petitions advocating more CPS oversight." **Exhibit A** (February 22, 2020 email from Lyons to Northwestern).

4. Northwestern acquiesced to the thinly veiled request from Lyons and terminated Hayes roughly two weeks later, notifying her by letter and in-person on March 6, 2020, despite her record of performance reviews with an overall rating of "Excelling." **Exhibit B** (2017-18 performance review), **Exhibit C** (2018-19 performance review).

5. Plaintiff brings four claims, none of which are barred by the Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq*. Those claims are: (1) violation of the First Amendment under 42 U.S.C. § 1983, (2) civil conspiracy under 42 U.S.C. § 1983, (3) tortious interference with prospective economic gain in the form of continued employment at Northwestern, and (4) civil conspiracy in furtherance of that tortious interference.

## Jurisdiction and Venue

6. This court has subject matter under 28 U.S.C. § 1331 and 42 U.S.C. § 1988 as the Complaint brings claims under 42 U.S.C. § 1983.

7. This court has supplemental jurisdiction over the state common law claims under 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) as the events underlying the claims occurred within the judicial district.

## Parties

9. Plaintiff is an adult resident of Illinois. She was formerly the Senior Coordinator for School Partnerships at Northwestern University.

10. Defendant Board of Education of the City of Chicago is a municipal body operating Chicago Public Schools.

11. Defendant Matthew Lyons has been the Chief Talent Officer for Chicago Public Schools since roughly December 2015.

12. Defendant Jane Does 1-3 are persons unknown, who conspired with Defendant Lyons to complain to Northwestern regarding Plaintiff Hayes, and in doing so violated her rights under the First Amendment and caused her to be fired. Their identities can readily be obtained by either the deposition of Lyons or a single interrogatory to Lyons. Alternatively, their identities would likely be revealed by Lyons' initial disclosures or MIDP production.

**Facts**

Plaintiff's Employment at Northwestern

13. Plaintiff was hired by Northwestern in September 2020 as the Senior Coordinator for School Partnerships. In that position, she oversaw the placement of student teachers, among other duties.

14. As part of her job, she would routinely work with Chicago Public Schools ("CPS") to place Northwestern students into CPS classrooms as student teachers.

15. The only two performance reviews in her personnel file, covering the time-period of May 1, 2017 through April 30, 2019, both rated her as "Excelling." **Exhibits B and C**.

16. Both performance reviews were performed and overseen by Timothy Dohrer.

Hayes Engages in Speech and Association Protected by the First Amendment

17. Over the last few years, Plaintiff has engaged in speech and association critical of CPS, including on social media.

18. This speech has included things such as calling for the expansion of the authority of the CPS Inspector General to "investigate and report on racial inequities in CPS," calling into question CPS's well-documented shortcomings regarding the policing of sexual misconduct at its schools, questioning public statements of CPS CEO Janice Jackson, and questioning CPS's commitment to fully staffing schools with librarians and social workers.

3

19. CPS and specifically defendant Lyons, were, upon information and belief, aware of this speech and motivated by this speech to contact Northwestern and encourage retaliation against Hayes for her speech. Attached as **Exhibit D** is a series of screen shots of Hayes' social media believed to have been collected by CPS in support of its complaint against Hayes.

20. Plaintiff's associative activities have included asking others to sign petitions sponsored by the groups Raise Your Hand and Chicago United for Equity to "demand that CPS build accountability measures around equity in its schools."

21. CPS and specifically defendant Lyons, were, upon information and belief, aware of this associative activity and motivated by the same to contact Northwestern and encourage retaliation against Hayes for her speech. Attached as **Exhibit D** is a series of screen shots of Hayes' social media believed to have been collected by CPS in support of its complaint against Hayes.

<u>Lyons Complains to Northwestern about Hayes' Speech and Association</u>

22. The email from defendant Lyons to Northwestern specifically complained about Hayes' speech and association.

23. The purpose of the email was to "reach[] out," "regarding some concerns [Lyons] wanted to raise with [Northwestern] about Dr. Hayes' social media usage….[.]" **Exhibit A.**

24. The email continued, "To be specific, over at least the past several months, Dr. Hayes has made public posts on Facebook which disparage CPS and question the motives and competence of our leadership, including CEO Jackson by name." **Exhibit A.**

25. The email highlighted the other speech and association by Hayes that is shown in the screenshots of her social media attached as **Exhibit D**, including: commenting about the "devastating situation at Lincoln Park HS," "promoting online petitions advocating more CPS

4

oversight," and calling on CEO Janice Jackson and CPS to "stop the inaccurate rhetoric about the longer day and year…[.]" **Exhibit A**.

26. The email also noted that "Dr. Hayes' online activity was brought to my attention by several CPS principals who have had or would have liked to have NU student teachers. They have expressed to me their desire not to host them moving forward because they believe Dr. Hayes' presence would expose their school to potential reputational risk online." **Exhibit A**.

27. The email ended by noting that Lyons was available to discuss the matter but would leave the matter in Northwestern's hand to "address as you believe appropriate." **Exhibit A**.

Northwestern Fires Hayes

28. Lyons addressed his email to Timothy Dohrer and David Figlio at Northwestern.

29. Dohrer was the same person who gave Hayes excellent reviews (**Exhibits B and C**).

30. Dohrer was Hayes' direct supervisor in February 2020.

31. Dohrer is the Director and Assistant Professor in the Master of Science in Education Program and is a former high school principal.

32. Figlio is the Dean of the School of Education and Social Policy.

33. Internal Northwestern documents reveal that five days after Dohrer received the complaint from Lyons and CPS, he requested the termination of Hayes. **Exhibit E.**

34. Likely in an attempt to establish some pretext of progressive discipline, the request for termination sets out three instances of alleged "prior corrective action steps" taken in 2017 and 2018.

35. One of those alleged prior steps involved emails from a CPS teacher complaining that Hayes was not promoting her CPS school to current Northwestern students in the manner the teacher thought appropriate.

36. That teacher went so far as to forward her emails with Hayes to Miriam Sherin, the Associate Provost for Undergraduate Education at Northwestern.

37. The copy of that email thread in Plaintiff's personnel file contains hand-written notes including that Hayes' writing that "some students are also more invested in serving CPS students than others are," and that she was "loathe to place a student at a school if they are not 100 percent on board with it," "sound[ed] negative towards CPS." **Exhibit F**.

38. Despite the after-the-fact papering of alleged prior corrective actions, it cannot be disputed that her contemporaneous performance reviews rated her as "Excelling." **Exhibits B and C.**

39. And those reviews were made by Timothy Dohrer, the same person who less than a year after last reviewing Hayes requested her firing five days after being emailed by Lyons and CPS.

40. As an example of the disconnect between Dohrer's actual reviews of Hayes' performance and the complaints, in her most current review on file he complimented her for "reducing our total number of schools we place in from 40 to 20," and also noted that, "She continues to deepen relationships with schools in D65, ETHS, CPS, D207, and several others." That is, she was complimented and rated as "Excelling" in part for deepening relationships with schools in CPS and reducing the total number of schools the program dealt with. **Exhibit C**, at p. 9.

6

41. Furthermore, the real reason for her firing was made explicit in the narrative request for her termination.

42. While Dohrer used one sentence to throw out the subjective and unsubstantiated assessment that, contrary to her actual performance reviews, "over the past several years, [Hayes] has demonstrated by way of her communication style and conduct she is unable to effectively perform her role," he continued in detail about the letter he received from Lyons. **Exhibit E.**

43. In Dohrer's words: "Dean David Figlio and Tim Dohrer recently received an email from the Chief Talent Officer of Chicago Public Schools (CPS) regarding months of disparaging posts about CPS schools and leadership made on social media by Kathleen." **Exhibit E.**

44. Dohrer continued, "As a result of the negative impact Kathleen has had on the extremely important partnership that SESP has with CPS and our educational partners, we request termination at this time. Our program cannot afford to further compromise our valued relationship with CPS (or any other districts) and Kathleen's behavior has had a direct negative impact on that relationship and other relationships within the community." **Exhibit E.**

45. To summarize: CPS complained to Hayes' employer that it did not like her speech and associative activities that were critical of it. Her supervisor then cited that complaint as the basis for firing Hayes.

46. On March 6, Hayes was informed in person and in writing that she was being fired.

**Count I—Violation of First Amendment (Retaliation)**

47. By contacting her employer and complaining about her social media activity, including her speech and association, defendants Lyons and Board of Education, each of whom was acting in a government capacity, retaliated against Plaintiff for activity protected by the First Amendment.

48. Plaintiff's speech and association, including as detailed above and in **Exhibit D**, was protected by the First Amendment.

49. As shown by timing, pretext, and innuendo, Lyons' email to Northwestern caused Plaintiff's termination.

50. Even had Northwestern not fired Plaintiff in response to Lyons' email, it was reasonably likely and foreseeable that the email could have resulted in a lesser discipline.

51. The email itself, and the internal Northwestern document reflecting the request for approval of the decision to fire Plaintiff, show that Lyons' email was substantially – if not exclusively – motivated by Plaintiff's speech and associative activities.

52. Such actions would furthermore be likely to chill a person of ordinary fortitude from engaging in criticism of CPS.

53. And while Plaintiff was not an employee of CPS, even if she were treated as such, whenever she was critical of CPS, its leadership, or its policies and practices, she was doing so as a private person, speaking on a matter of public concern or otherwise engaged in lawful association, as evidenced by **Exhibit D** and Lyons' letter highlighting CPS's complaints.

WHEREFORE, Plaintiff prays this Court:

(A) Enter judgment in her favor and against defendants Lyons and Board of Education for the City of Chicago;

(B) Award her compensatory damages;

(C) Award her punitive damages against Lyons;

(D) Order defendant Board of Education for the City of Chicago to indemnify Lyons for any award of compensatory damages;

(E) Award Hayes her fees and costs under 42 U.S.C. § 1988; and

(F) Grant her such other relief as is warranted by law or equity.

## Count II—Violation of First Amendment (Conspiracy)

54. Lyons does not appear to have acted alone in building the complaint against Hayes.

55. For example, his email identified "several CPS principals" whom he was coordinating with. Plaintiff does not know the identity of those principals or their involvement in the underlying acts and that is one of the reasons Plaintiff has named "Jane Doe" defendants.

56. There may be others outside of Lyons and those principals, which is also why Plaintiff has named "Jane Doe" defendants.

57. Conspiracy exists under Section 1983 exists to impose liability on each of the persons involved, regardless of who performed the specific act, in this case, Lyons sending the email.

58. It appears that others worked in concert with Lyons in preparing the case and making the complaint to Northwestern regarding Hayes' protected activity, and as such, a claim for conspiracy can be stated.

WHEREFORE, Plaintiff prays this Court:

(A) Enter judgment in her favor and against defendants Lyons, Board of Education for the City of Chicago, and any other person found to have participated in a conspiracy to

retaliate against her for engaging in speech and association protected by the First Amendment;

(B) Award her compensatory damages;

(C) Award her punitive damages against Lyons and any other person who participated in the conspiracy against whom punitive damages may be awarded;

(D) Order defendant Board of Education for the City of Chicago to indemnify Lyons and any other person held liable under a conspiracy to violate Hayes' First Amendment rights for any award of compensatory damages;

(E) Award Hayes her fees and costs under 42 U.S.C. § 1988; and

(F) Grant her such other relief as is warranted by law or equity.

**Count III—Tortious Interference with Prospective Economic Gain**

59. Plaintiff had received only excellent performance reviews at Northwestern and reasonably expected to continue her employment, which benefitted her economically, reputationally, and professionally.

60. As evidenced by Lyons' letter, among other things, Lyons and CPS knew that Hayes was employed at Northwestern, knew who her supervisor was, and knew that she would be likely to continue her employment at Northwestern absent some interference.

61. Because CPS (and persons inside CPS including Lyons) held malice and animus against Hayes because of her criticism of CPS and its leadership, Lyons sent an email that purposefully and intentionally sought to terminate or at least limit Hayes' ongoing employment at Northwestern.

62. The email had that desired effect and resulted in the prompt termination of Hayes' employment.

63. That termination has caused great harm to Hayes, who has suffered financially from a loss of income and has further suffered a setback in her career.

WHEREFORE, Plaintiff prays this Court:

(A) Enter judgment in her favor and against defendants Lyons and Board of Education for the City of Chicago;

(B) Award her compensatory damages;

(C) Award her punitive damages against Lyons, and to the extent allowed CPS;

(D) Order defendant Board of Education for the City of Chicago to indemnify Lyons for any award of compensatory damages; and

(E) Grant her such other relief as is warranted by law or equity.

### Count IV—Civil Conspiracy (Tortious Interference)

64. As evidenced, *e.g.,* by the Lyons email (**Exhibit A**), it is apparent that Lyons was acting in concert with several other currently unknown persons in compiling evidence and preparing a complaint about Hayes' protected speech and association to her employer.

65. One of the desired outcomes of that concerted action was to encourage Northwestern to either end or limit Hayes' employment, as set forth above and as detailed in Count III.

66. Civil conspiracy, under Illinois law, involves the combination of two or more persons combining their actions to achieve either a lawful purpose by unlawful means or an unlawful purpose by lawful means.

67. The coordinated effort to target Hayes for her protected speech and association by a group of unknown persons working in coordination with Lyons is such a conspiracy.

68. By working together through means unknown but believed to include encouragement in sending the Lyons email (**Exhibit A**) and in compiling Hayes' criticisms of CPS, the unknown participants in the conspiracy gave substantial assistance or encouragement in accomplishing the tortious interference with Hayes' prospective economic gain.

69. In doing so, all participants knew or should have known that their conduct was wrong.

70. The end result of the conspiracy was Northwestern firing Hayes.

WHEREFORE, Plaintiff prays this Court:

(A) Enter judgment in her favor and against defendants Lyons, Board of Education for the City of Chicago, and any other person found to have participated in a conspiracy to end or limit her employment at Northwestern;

(B) Award her compensatory damages;

(C) Award her punitive damages against Lyons and any other person who participated in the conspiracy against whom punitive damages may be awarded;

(D) Order defendant Board of Education for the City of Chicago to indemnify Lyons and any other person held liable under a conspiracy to tortiously interfere with Hayes' prospective economic gain; and

(E) Grant her such other relief as is warranted by law or equity.

Date: March 2, 2021      By: /s/ Michael P. Persoon
                                                         Michael P. Persoon

Thomas H. Geoghegan
Michael P. Persoon
Will Bloom
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511