IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN HAYES, | |
| Plaintiff, | No. 21-cv-01198 |
| v. | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, MATTHEW LYONS, and JANE DOES 1–3, | Judge John F. Kness |
| Defendants. | |

**MEMORANDUM OPINION & ORDER**

Until her termination from Northwestern University, Plaintiff Kathleen Hayes oversaw the placement of student teachers at Chicago Public Schools (CPS). During her employment, Plaintiff was publicly critical of CPS and its leadership. Among other things, she posted complaints against CPS on social media and promoted petitions critical of CPS's leadership. According to Plaintiff, Defendant Matthew Lyons, the Chief Talent Officer for CPS and the Board of Education of the City of Chicago (the "Board"), along with the unknown principals at several CPS schools (Jane Does 1–3), compiled instances of Plaintiff's criticism, and Defendant Lyons emailed Plaintiff's supervisor at Northwestern University to express "concerns" about Plaintiff's social media activity. That email, according to Plaintiff, led to her termination.

Plaintiff brought the present suit against Lyons, the Board, and Jane Does 1–3 for violating and conspiring to violate Plaintiff's First Amendment rights. She alleges that Lyons and Jane Does 1–3's collection of her social media activity and Lyons' email to Plaintiff's supervisor were unlawful retaliation for her constitutionally protected speech and association activities. Plaintiff also alleges, under state law, that Defendants tortiously interfered with the prospective economic gains of her continued employment.

Defendants moved to dismiss, arguing that Plaintiff fails to adequately allege her constitutional claims and that Defendants are entitled to immunity under federal and state law. But Defendants' arguments are premature. Plaintiff plausibly alleges each of her claims, including those against Lyons and the Board, with sufficient particularity to put Defendants on notice about the substance of those claims. Likewise, resolution of Defendants' immunity arguments would require the Court to find facts not properly before the Court at this stage of the litigation. As the Seventh Circuit has repeatedly explained, dismissal at the pleading stage on immunity grounds is generally "inappropriate." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Accordingly, Defendants' motion to dismiss (Dkt. 13) is denied.

## I. BACKGROUND

Plaintiff Hayes worked at Northwestern University as the Senior Coordinator for School Partnerships from September 2016[1] until she was terminated in March

---

[1] Although Plaintiff alleges that she was hired in September 2020 (Dkt. 1 ¶ 13), one of Plaintiff's exhibits confirms that her employment began in September 2016. (Dkt. 1-5). For

2

2020. (Dkt. 1 ¶ 13.) In that role, Plaintiff "oversaw the placement of student teachers," a responsibility that required her to work with CPS to place Northwestern University student teachers on school campuses. (*Id.* ¶¶ 13–14.) During her employment, Plaintiff received two performance reviews, both of which rated her as "Excelling." (*Id.* ¶ 15.)

In the years preceding Plaintiff's termination, she alleges that she "engaged in speech and association critical of CPS." (*Id.* ¶ 17.) According to her, that speech included

> things such as calling for the expansion of the authority of the CPS Inspector General to "investigate and report on racial inequities in CPS," calling into question CPS's well-documented shortcomings regarding the policing of sexual misconduct at its schools, questioning public statements of CPS CEO Janice Jackson, and questioning CPS's commitment to fully staffing schools with librarians and social workers.

(*Id.* ¶ 18.)

Plaintiff posted criticism on social media and promoted petitions critical of CPS. For example, on October 30, 2019, Plaintiff wrote in a social media post that CPS's (and the State of Illinois's) "lack of resources and systemic inequities have become an acceptable status quo" for many educators. (Dkt. 1-4 at 8.) Plaintiff also commented on another social media user's post that "Janice Jackson and CPS should stop the inaccurate rhetoric about the longer day and year because they spout it All. The. Time." (*Id.* at 7.) On February 11, 2020, Plaintiff shared a petition sponsored by

---

purposes of resolving the present motion, the Court assumes Plaintiff was employed by Northwestern University starting in September 2016.

Raise Your Hand and Chicago United for Equity demanding CPS "build accountability measures around equity in schools." (*Id.* at 4.)

On February 22, 2020, Defendant Lyons, CPS's Chief Talent Officer, sent an email to Timothy Dohrer, the Director and Assistant Professor in the Master of Science in Education Program at Northwestern University and Plaintiff's direct supervisor, and to David Figlio, Northwestern's Dean of the School of Education and Social Policy. In his email, Lyons expressed his and "several CPS principals[']" (Jane Does 1–3's) "concerns" about Plaintiff's "social media usage" and noted the posts Plaintiff made "over at least the past several months" which "disparage CPS and question the motives and competence of [CPS's] leadership." (Dkt. 1-1 at 1.) Lyons also referenced Plaintiff's social media posts critical of specific campuses and CPS policies described above. (*Id.*)

Five days later, on February 27, Dohrer requested that Northwestern University terminate Plaintiff. (Dkt. 1 ¶ 33; *see* Dkt. 1-5.) On the Request for Termination form, Dohrer cited three instances of alleged "prior corrective action steps" in 2017 and 2018, and he referenced Defendant Lyons's email and Plaintiff's social media activity critical of CPS. (Dkt. 1 ¶ 34; Dkt. 1-5 at 1.) On March 6, 2020, Plaintiff was terminated from Northwestern University. (Dkt. 1 ¶ 46.)

On March 2, 2021, Plaintiff brought the present suit, alleging four claims against Defendants. In Count I, Plaintiff alleges that Defendants Lyons and the Board retaliated against Plaintiff for activity protected by the First Amendment by contacting and complaining to her employer about her social media activity. (*Id.*

4

¶¶ 47−53.) In Count II, she alleges that Defendants, including the Jane Doe "CPS principals" referenced in Lyons's email, conspired to violate her constitutional rights. (*Id.* ¶¶ 54–58.) In Counts III and IV, Plaintiff alleges under state law that Defendants tortiously interfered with her prospective economic gain when Lyons "sent an email that purposefully and intentionally sought to terminate or at least limit [Plaintiff's] ongoing employment at Northwestern." (*Id.* ¶¶ 59−70.)

Defendants now move to dismiss the complaint, contending that Plaintiff does not allege sufficient facts to assert a plausible First Amendment retaliation claim, (Dkt. 13 at 5–6); that Plaintiff fails to allege any plausible *Monell* theory of liability to hold the Board liable (*id.* at 8); and that Plaintiff does not plausibly allege a meeting of the minds between Defendants Lyons and Jane Does 1–3 to support a conspiracy claim (*id.* at 10). Defendants also argue that Defendant Lyons is entitled to qualified immunity and that both Defendants Lyons and the Board are immune under state law. (*Id.* at 4–5.) Finally, Defendants argue that Defendants Lyons and the Board are immune from punitive damages under state law. (*Id.* at 11–12.)

## II.   STANDARD OF REVIEW

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a

5

right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys 'a story that holds together.'" *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (quoting *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826–27 (7th Cir. 2014)). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the Plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678−79.

### III. DISCUSSION

#### A. Plaintiff's § 1983 First Amendment Retaliation Claim (Count I)

In Count I, Plaintiff alleges that Defendants Lyons and the Board violated Plaintiff's First Amendment rights to free speech and association by emailing her supervisors to complain about her criticism of CPS. (Dkt. 1 ¶¶ 47−53.) According to Plaintiff, Defendant Board is liable for the First Amendment violation because Defendant Lyons was a person with final policymaking authority on behalf of the Board. (*Id.* ¶¶ 53; 11.) In their motion to dismiss, Defendants argue that Plaintiff does not plausibly allege (1) that Defendant Lyons violated Plaintiff's First Amendment rights; and (2) a *Monell* theory of liability is sufficient to hold the Defendant Board liable. (Dkt. 13 at 5−8.)

##### 1. Defendant Lyons

Section 1983 provides a cause of action for "deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983. To bring

6

a First Amendment retaliation claim, a plaintiff must allege that "(1) [s]he engaged in activity protected by the First Amendment, (2) [s]he suffered a deprivation that would likely to deter First Amendment activity in the future,; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendant's decision to take the retaliatory action." *Thompson v. Brown*, 2021 WL 2254970, at *2 (N.D. Ill. June 3, 2021) (quoting *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021) (cleaned up)).[2]

Defendants challenge the adequacy of Plaintiff's claim against Lyons. Among other contentions, Defendants argue that, even assuming Plaintiff's social media activity was constitutionally-protected speech, a public official's (such as Defendant Lyons's) speech is only actionable when it contains "a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow." (Dkt. 13 at 6 (citing *Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011))). According to Defendants, Lyons's email only suggested that Dohrer and Figlio should address Plaintiff's behavior as they "believed appropriate." (*Id.*) Defendants also argue that Plaintiff "cannot allege protected speech was a motivating factor" for the alleged deprivation of her First Amendment rights. (*Id.* at 7.)

---

[2] Although the Seventh Circuit has not specified the standard to be applied for § 1983 First Amendment retaliation claims where no employment relationship exists between the parties, the Court agrees with another judge in this District that there is "no meaningful distinction in the applicable standards for § 1983 claims brought either by employees or non-employees." *Villagrana v. Vill. of Oswego*, 2005 WL 2322808 at *3 (N.D. Ill. Sept. 22, 2005) (citing *Chicago Reader v. Sheahan,* 141 F. Supp. 2d 1142 (N.D. Ill. 2001)).

7

Defendants' arguments may carry the day at a later stage of litigation. But those arguments are premature in a motion to dismiss. As the Seventh Circuit has explained,

> pleadings in federal court need not allege facts corresponding to each 'element' of a statute. It is enough to state a claim for relief—and [Rule 8 of the Federal Rules of Civil Procedure] departs from the old code-pleading practice by enabling plaintiffs to dispense with the need to identify, and plead specifically to, each ingredient of a sound legal theory . . . . Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of . . . . Any district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation? . . . Complaints initiate the litigation but need not cover everything necessary for the plaintiff to win; factual details and legal arguments come later. A complaint suffices if any facts consistent with its allegations, and showing entitlement to prevail, could be established by affidavit or testimony at a trial.

*Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (cleaned up). Plaintiff adequately alleges her First Amendment retaliation claim. According to her, Defendant Lyons's email was retaliation for Plaintiff's constitutionallyprotected speech and that email led to her termination. (Dkt. 1 ¶ 47.) Such allegations are sufficient to state a claim for relief.

Defendants' arguments to the contrary would require factfinding not proper at this stage of the case. For example, Defendants' argument that Lyons's email was "so trivial a person of ordinary firmness would not be deterred" in exercising her right to freedom of speech or association (Dkt. 13 at 7 (quoting *Hoffman v. DeWitt Cnty.*, 2018 WL 3758566, at *11 (C.D. Ill. Aug. 8, 2018)) would require the Court to make findings about the content of Lyons's email in Defendants' favor. Beyond the principle that

8

questions of fact "are more properly considered" on a motion for summary judgment, *Anderson Designer Homes Co. v. Amwood Homes, Inc.*, 1992 WL 168799, at *1 (N.D. Ill. July 13, 1992), the Court is required to draw factual inferences in Plaintiff's (not Defendants') favor at this stage, *Iqbal*, 556 U.S. at 678. So drawn, the inferences from and allegations in Plaintiff's complaint are enough to survive the present motion.

    2.    *Defendant Board*

Plaintiff's allegations are likewise sufficient to support Plaintiff's claim against the Board. Under *Monell v. Department of Social Services*, local government entities such as the Board can be held liable under § 1983 for constitutional deprivations caused by their official policies or customs. 436 U.S. 658, 694 (1978). More specifically, a local government entity can be liable where there is "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012) (citation omitted).

As the Supreme Court has made clear, "federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability," and "[t]he Seventh Circuit has interpreted this mandate to allow 'conclusory' *Monell* complaints to survive motions to dismiss when they are 'sufficient to put the [local governing body] on notice of [the plaintiff's] claim against it.'" *Howard v. Sheriff of Cook Cnty.*, 2016 WL 4366598, at *3 (N.D. Ill. Aug. 16, 2016)

9

(alterations in original) (quoting *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000)); *see also Horton v. Guzman*, 2017 WL 1233028, at *5 (N.D. Ill. Apr. 4, 2017).

Plaintiff pleads her *Monell* claim with sufficient specificity to put the Board on "notice of the crux of [Plaintiffs'] charges." *McCormick*, 230 F.3d at 325. Plaintiff alleges that Defendant Lyons, as the Board's Chief Talent Officer, is a person with final policymaking authority and that Lyons caused Plaintiff's First Amendment retaliation injury by emailing her supervisors. (Dkt. 1 ¶¶ 11; 26–27.) Taken as true, those allegations are enough to apprise the Board of the nature of Plaintiff's claims against it and thus to survive Defendants' motion to dismiss.

### B. Plaintiff's § 1983 Conspiracy Claim (Count II)

In Count II, Plaintiff alleges that Defendant Lyons conspired with Jane Does 1–3 "in preparing the case and making the complaint to Northwestern regarding Hayes'[s] protected activity." (Dkt. 1 ¶ 58.) To state claim under § 1983 for civil conspiracy, Plaintiff "must allege facts from which the Court may reasonably infer there was '(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement.'" *Wheeler v. Piazza*, 364 F. Supp. 3d 870, 880 (N.D. Ill. 2019) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)).

Although a conspiracy claim "bereft of any suggestion, beyond a bare conclusion" would be insufficient, *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir.

10

2009), there is "no heightened pleading standard for conspiracy claims: 'it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with,'" *Sanchez v. Vill. of Wheeling*, 447 F. Supp. 3d 693, 705 (N.D. Ill. 2020) (quoting *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002)).

Defendants argue that, even if Plaintiff plausibly alleges her First Amendment retaliation claim (Count I), she fails to allege sufficient facts to establish that the Defendants had a "meeting of the minds" to support her conspiracy claim (Count II). (Dkt. 13 at 9–10 (citing *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982))).[3] But construing the complaint liberally in Plaintiff's favor, *Iqbal*, 556 U.S. at 678, Count II plausibly alleges a conspiracy claim. Defendant Lyons states in his email to Plaintiff's supervisors that "several CPS principals" brought concerns regarding Plaintiff's "online activity" to Defendant Lyons's attention. (Dkt. 1-1 at 2.)[4] Those Jane Does purportedly told Lyons that they would be unwilling to host Northwestern student teachers on their campuses because they "believe [Plaintiff's] presence would expose their school[s] to potential reputational risk online." (*Id.*) Based on such statements, Plaintiff alleges that Lyons "does not appear to have acted alone in building the complaint" and, in fact, that "others [Jane Does 1−3] worked in concert

---

[3] Defendants also argue that, because Plaintiff failed to plead a First Amendment violation, there can be no § 1983 conspiracy claim. (Dkt. 20 at 11.) Having found that Plaintiff plausibly alleges a First Amendment retaliation claim (*see above*), that argument fails.

[4] At the motion to dismiss stage, the Court takes as true the factual allegations in the complaint as well as in any exhibits attached to the complaint. *See Green v. Ill. State Bd. of Educ.*, 849 F. App'x 593, 593 (7th Cir. 2021) (citing *Squires-Cannon v. Forest Preserve Cook Cnty.*, 897 F.3d 797, 802 (7th Cir. 2018)); *see also* Fed. R. Civ. P. 10(c).

11

with Lyons in preparing the case and making the complaint to Northwestern regarding [Plaintiff's] protected activity." (Dkt. 1 ¶¶ 54–58.) Such allegations are sufficient to support Plaintiff's conspiracy claim.

Defendants also argue that Plaintiff's conspiracy claim fails under the intracorporate conspiracy doctrine. According to Defendants, "a conspiracy cannot exist between an employer's own officers and employees." (Dkt. 20 at 11 (citing *Simonsen v. Bd. of Educ.*, 2002 WL 230777, at *7 (N.D. Ill. Feb. 13, 2002)). In *Simonsen*, a teacher alleged that his employers and supervisors conspired to deprive him of a property right in continued employment. *Simonsen*, 2002 WL 230777, at *1. Rejecting the teacher's claim, the court held that "neither a corporation nor its managers may be held liable for conspiracy . . . for actions taken within the scope of the corporation's business." *Id.* at *7. Based on *Simonsen*, Defendants argue that "Lyons['] communications with CPS principals, [who are] also employed by the Board, cannot comprise a conspiracy." (Dkt. 20 at 12 (citation omitted).)

But the Seventh Circuit has not addressed the applicability of the intracorporate conspiracy doctrine to § 1983 claims. *See Liggins v. City of Chicago*, 2021 WL 2894167, at *5 (N.D. Ill. July 9, 2021) (citations omitted). Moreover, even assuming that doctrine applies, it only shields "routine, collaborative business decisions that are later alleged to be discriminatory." *Newsome v. James*, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000). At this stage, it is at best unclear whether Defendants' collection of Plaintiff's social media posts, documentation of her Facebook group affiliations, and notification to Plaintiff's supervisors of such posts and

12

affiliations constitute the type of "routine . . . business decisions" covered by the doctrine. In other words, drawing inferences in Plaintiff's favor, the Court cannot dismiss Plaintiff's conspiracy claim under the intracorporate conspiracy doctrine.

### C.    Defendants' Immunity

Defendants also advance three theories of immunity: that Defendant Lyons is immune from Plaintiff's First Amendment retaliation claims (Counts I and II) under the federal doctrine of qualified immunity; that Lyons and the Board are immune from Plaintiff's state law claims (Counts III and IV) under the Illinois Tort Immunity Act (TIA); and that the Board and Lyons are immune from punitive damage under a different provision of the TIA. (Dkt. 13 at 4–5, 11−12.) These arguments are premature.

#### 1.    Federal and State Law Immunities

Qualified immunity shields public officials from liability "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In turn, under the TIA, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 Ill. Comp. Stat. 10/2-201. In other words, to be afforded TIA protection, the public employee must (1) be empowered with either discretion or policy making authority; and (2) commit an act

13

or omission that is both "a determination of policy and an exercise of discretion." *Harinek v. 161 N. Clark St. Ltd. P'ship*, 181 Ill. 2d 335, 341 (1998).

Defendants argue that Lyons is immune from Plaintiff's First Amendment retaliation under the doctrine of qualified immunity and that Lyons and the Board are immune from Plaintiff's state law claims under the TIA. (Dkt. 13 at 4–5, 11.) But dismissal under either source of immunity is premature. The Seventh Circuit has repeatedly cautioned that, because "immunity defense[s] usually depend[] on the facts of the case, dismissal at the pleading stage is inappropriate." *Alvarado*, 267 F.3d at 651; *see Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). As explained by another judge in this District,

> on [] one hand, qualified immunity is a defense to suit rather than just liability, and should be addressed as early as possible. On the other hand, [Rule 8 of the Federal Rules of Civil Procedure] does not require plaintiffs to anticipate a qualified immunity defense and allege every fact needed to defeat it in the complaint. Thus, a court must determine whether the facts actually alleged clearly establish a qualified immunity defense. If not, courts have a variety of ways to protect defendants from unnecessary litigation, such as requiring a more definite statement of the claim, a reply to an answer, or summary judgment briefing.

*Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 650 (N.D. Ill. 2011) (cleaned up). The same reasoning applies with equal effect to the TIA. *Wilson v. City of Chicago*, 758 F.3d 875, 880 (7th Cir. 2014) (construing statutory immunity, such as that available under the TIA, as an "affirmative defense[]"); *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 759 (N.D. Ill. 2015) (recognizing that "the Tort Immunity Act provides affirmative defenses").

The mere presence of Defendants' potential immunity defenses "does not render [Plaintiff's] claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). On the contrary, "a plaintiff may state a claim even though there is a defense to that claim." *Id.* Reading the complaint in her favor, Plaintiff has not clearly alleged facts that support Defendants' qualified immunity or immunity under the TIA. Accordingly, Defendants' appeals to either source of immunity are not proper at this stage.

### 2. *Immunity from Punitive Damages*

Defendants also argue that the Board and Lyons are immune from punitive damages. (Dkt. 13 at 11−12.) A separate provision of the TIA provides circumstances under which local public entities and public officials may be immune from such damages. 745 Ill. Comp. Stat. 10/2–102. Because the principal consideration at this stage is whether the claims present a "short, plain, and plausible factual narrative that conveys a story that holds together," *Kaminski*, 23 F.4th at 777 (internal quotation marks omitted), the Court will reserve its evaluation of what remedies may be available to Plaintiff for a later time. It is "simply too early" to determine the facts necessary to any immunity from punitive damages. *Lifton v. Bd. of Educ. of Chi.*, 290 F. Supp. 2d 940, 946 (N.D. Ill. 2003). Defendants' immunity arguments are denied without prejudice to Defendants raising those arguments anew at a later time.

15

## IV. CONCLUSION

Defendants' motion to dismiss (Dkt. 13) is denied.

SO ORDERED in No. 21-cv-01198.

Date: September 19, 2022

JOHN F. KNESS
United States District Judge