## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KATHLEEN HAYES,

      Plaintiff,

         v.

BOARD OF EDUCATION FOR THE
CITY OF CHICAGO, MATTHEW
LYONS, and THREE JANE DOES,

      Defendants.

No. 21 CV 1198

Judge John F. Kness

## ORDER

Before the Court are the parties' cross-motions for summary judgment. (*See* Dkts. 75, 79.) For the reasons provided in the accompanying Statement, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted in part. Plaintiff's motion for leave to cite supplemental authorities (Dkt. 107) is dismissed as moot. A status hearing will be set by separate order.

## STATEMENT

### I.    Background

Plaintiff Kathleen Hayes worked for Northwestern University as the Senior Coordinator for School Partnerships. (Dkt. 87 at 4.) In that role, Plaintiff placed Northwestern students as student teachers in schools, some of which were Chicago Public Schools (CPS). (*Id.*) CPS was Northwestern's largest partner for student teaching placements. (*Id.* at 5–6.) Plaintiff had consistently received ratings of "excelling" on performance reviews by her supervisor, Tim Dohrer. (Dkt. 98 at 2.)

While serving in this role, Plaintiff made numerous social media posts critical of CPS, and at least one CPS principal found those posts to be inappropriate. (Dkt. 87 at 6.) That principal notified Defendant Matthew Lyons, Chief Talent Officer of Defendant Board of Education of the City of Chicago, of Plaintiff's social media posts. (*Id.*) Lyons emailed Dohrer and David Figlio, then-Dean of Northwestern School of

Education and Social Policy, discussing some of the content of the posts and Lyons's concern that Plaintiff's posts "compromised" the relationship between CPS and Northwestern. (*Id.* at 8.) Toward the end of the email, Lyons wrote, "I will leave this in your hands to address as you believe appropriate." (*Id.* at 9.) In a later email on the subject, Lyons wrote, "I don't think this is a termination-worthy issue." (*Id.* at 14.) Dohrer fired Plaintiff shortly thereafter. (*Id.* at 19.)

Plaintiff sued Defendants Board of Education for the City of Chicago, Matthew Lyons, and three Jane Does alleging that Defendants pressured Northwestern into firing Plaintiff in retaliation for Plaintiff's social media posts. Plaintiff's complaint brings four counts: Count I alleges a First Amendment retaliation claim; Count II alleges a conspiracy to violate Plaintiff's First Amendment rights; Count III alleges tortious interference with prospective economic gain; and Count IV alleges a civil conspiracy for the tortious interference. (Dkt. 1 at 8–12.) Defendants move for summary judgment on all counts; Plaintiff moves for summary judgment on Count I.

## II.    Discussion

### A.    Legal Standard

#### 1.    *Summary Judgment*

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

### B.    Conspiracy Claims (Count II and Count IV)

Plaintiff alleges two counts of conspiracy: a conspiracy to interfere with her First Amendment rights (Count II) and a conspiracy to interfere with her prospective economic gain (Count IV). (Dkt. 1 at 8–11.) Defendants move for summary judgment on these counts. (Dkt. 76 at 6.) Plaintiff did not respond to Defendants' arguments; in fact, she made no reference to her conspiracy claims in either her response to

Defendants' motion for summary judgment or in her own motion. Plaintiff has therefore waived any argument on those counts. *See Laborers' Intern. Union of North America v. Caruso*, 197 F.3d 1195 (7th Cir. 1999). Summary judgment is entered in favor of Defendants as to Counts II and IV.

### C. First Amendment Retaliation (Count I)

To state a claim under Section 1983 for a violation of First Amendment rights, a plaintiff must show that: (1) she engaged in constitutionally protected speech; (2) she suffered a deprivation likely to deter her free speech; and (3) her speech was at least a motivating factor for the deprivation. *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019).

The basis of Plaintiff's First Amendment Retaliation claim is that Lyons, in response to Plaintiff's social media posts, emailed Northwestern with the intention of inducing Northwestern to act in some way that would prevent Plaintiff or somebody in her position from posting similar content in the future. (Dkt. 88 at 3.) As Defendants themselves explain, a public official's "claimed retaliatory speech is actionable only in the presence of threat, coercion, or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow." (Dkt. 76 at 4 (citing *Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011).)

Defendants argue that "Lyons'[s] emails are devoid of threats of sanction" and therefore cannot form the basis for Plaintiff's retaliation claim. (*Id.* at 5.) But Plaintiff has put forth evidence to the contrary, including that she was fired after Lyons sent the emails despite her excellent performance reviews. Whether Lyons's communications with Northwestern were—in actuality—a threat, constitutes a genuine issue of material fact necessitating trial. Accordingly, both parties' motions for summary judgment on this point are denied.

### D. Qualified Immunity

Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation," which include "liability for money damages[,] . . . 'distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)). In effect, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When a defendant raises the defense of qualified immunity, "the plaintiff bears the burden of defeating it by showing that (1) the defendants violated a constitutional right and (2) the constitutional right was clearly established at the time of the

violation." *Garcia v. Posewitz*, 79 F.4th 874, 879 (7th Cir. 2023) (internal quotations and citations omitted); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001).

Defendants seek the shield of qualified immunity, arguing that, even if Plaintiff made a sufficient showing of a constitutional violation, she did not show that the law proscribing Defendants' alleged conduct was clearly established. (Dkt. 99 at 7.) Accordingly, Defendants argue, Defendant Lyons is immune from Plaintiff's constitutional claims. (*Id.*)

Plaintiff argues that Seventh Circuit caselaw clearly establishes that even petty harassment could amount to First Amendment retaliation. (Dkt. 88 at 7 (citing *Massey v. Johnson*, 457 F.3d 711, 721 (7th Cir. 2006) (Seventh Circuit employs a "relatively low threshold" in determining adverse action); *The Chicago Reader v. Sheahan*, 141 F. Supp. 2d 1142, 1145 (N.D. Ill. 2001) (adverse action need only potentially chill speech).) Plaintiff's argument and citations to supporting caselaw are sufficient, at this stage, to show that the law was clearly established: a reasonable public official in Defendant Lyons's shoes would have understood that sending a threatening email to an individual's employer seeking to chill the employee's speech violated the employee's constitutional rights. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Accordingly, Defendant Lyons is not protected by qualified immunity.

### E. *Monell* Liability

Defendants argue that the Board is not liable for Plaintiff's First Amendment Retaliation claim (Count I) because there is no liability under *Monell*. (Dkt. 76 at 9.) To establish liability under *Monell*, a plaintiff must prove, among other things, "a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority . . . ." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). Plaintiff focuses on the third possibility, arguing that Lyons had policy-making authority. (Dkt. 88 at 6.) Defendants counter that Illinois law establishes that the Board itself has final policy-making authority. (Dkt. 76 at 11.) Defendants also argue that there is no evidence that the Board delegated policy-making authority to Lyons "on the particular issue in this case: the Board's relationship with Northwestern." (*Id.*)

Plaintiff insists that Lyons was an individual with policy-making authority because he "did not need approval from anyone to send the email" and because "there was no 'higher authority' than Lyons" on the issue. (Dkt. 88 at 6 (quoting *Gernetzke v. Kenosha Un. Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001).) To support this assertion, Plaintiff points to Lyons's deposition, during which he testified that he "didn't need permission from anyone else to send that email." (Dkt. 78-4 at 94:22–95:23.) Plaintiff also argues that Lyons's emails should be considered as coming from

the Board because Lyons, the Board's Chief Talent Officer, complained about Plaintiff's "criticism of CPS and its leadership—not specifically [Lyons] himself." (*Id.*)

The evidence that Plaintiff raises, specifically, that Lyons himself admitted there was no authority above him regarding his interactions with Northwestern, is sufficient to establish a genuine issue of fact regarding whether Lyons was a final policy-maker for *Monell* purposes. Accordingly, Defendants' motion for summary judgment on the constitutional claims for lack of *Monell* liability fails.

### F.   Immunity under the Illinois Tort Immunity Act

#### 1.   Timeliness

Defendants argue that Plaintiff's tortious interference claim (Count III) is time-barred by the one-year statute of limitations established in the Illinois Tort Immunity Act, 745 ILCS 10/8-101(a). (Dkt. 76 at 11–12.) Defendants argue that Plaintiff was on notice of Lyons's email on February 26, 2020, so Plaintiff's filing of this lawsuit on March 2, 2021 was too late. (*Id.*) Plaintiff responds that she did not learn of the harm of the email (that is, her termination) until March 6, 2020; Plaintiff argues that her March 2, 2021 filing was therefore timely. (Dkt. 88 at 9–10.) 745 ILCS 10/8-101 provides that a civil action against a local entity or public employee must commence "within one year from the date that the injury was received or the cause of action accrued." Because Plaintiff argues that the constitutional injury was her termination, the statute of limitations clock began on March 6, 2020, and her claims are timely.

#### 2.   Illinois Tort Immunity Act Provisions (Count III)

Defendants argue that they are immune from Plaintiff's state law tort claim (Count III) under various provisions of the Illinois Tort Immunity Act, including 745 ILCS 10/2-107, 2-210, and 2-201. (Dkt. 76 at 12.) Plaintiff responds only to the argument concerning 2-201. (Dkt. 88 at 9.) Plaintiff therefore waives any argument against the application of 2-107 and 2-210.

Under 745 ILCS 10/2-107, a "local public entity is not liable for an injury caused by any action of its employees that is libelous or slanderous or for the provision of information . . . by computer or any other electronic transmission . . . ." And 745 ILCS 10/2-210 provides that a "public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information . . . by computer or any other electronic transmission . . . ." Plaintiff alleges that her termination was caused by Lyons's emails sent to Northwestern. Defendants argue that Lyons's emails were provisions of information sent by computer and thus actions covered by the Illinois Tort Immunity Act. (Dkt. 76 at 12.) Because Plaintiff does not refute this argument, Defendants are immune to Plaintiff's

state law claims. Summary judgment is therefore entered in favor of Defendants for Plaintiff's state law claim (Count III).

## III.   Conclusion

Plaintiff's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted in part. Summary judgment is entered in favor of Defendants on Counts II, III, and IV.

SO ORDERED in No. 21-cv-01198.

Date: September 26, 2024

JOHN F. KNESS
United States District Judge